# Qualified Assignment and Release Agreement
## In Accordance With
## Internal Revenue Code Section 130

"Claimant(s)":   J____ B____, a minor _____

"Assignor":   _____City of Philadelphia_____

"Settlement Agreement": _____
[Exact title of Settlement Agreement, order or other document that sets forth the Assignor's obligation to make the agreed periodic payments]

"Governing Law": _____

"Assignee": BHG STRUCTURED SETTLEMENTS, INC._____

"Annuity Issuer": BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA___

"Effective Date": _____

Annuity Contract No.: _____

This Qualified Assignment and Release Agreement ("Agreement") is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant(s) and Assignor are parties to or are otherwise subject to, and Claimant(s) is/are entitled to receive payments under, the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified in Addendum No. 1 of this Agreement (the "Periodic Payments"); and

B. Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

C. This Agreement will be effective upon Assignee's receipt of the full premium to fund the periodic payments contained herein,

Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i.  damages (other than punitive damages), whether by suit or agreement, or

   ii. compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor as of the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic

Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee (as defined in Paragraph 8 of this Agreement) shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includable in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments**. Assignee may instruct Annuity Issuer to send payments directly to Claimant, or, if applicable, to a Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford Claimant or any Successor Payee any rights of ownership or control of the Annuity.

    Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current mailing address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer (EFT), the name, address, ABA routing number and telephone number of the applicable U.S. financial institution and the account name and account number to which the payments are to be credited.  Such notices shall be in a form provided by the Annuity Issuer and must be received at least thirty (30) days prior to the date payment is due.

6. **Discharge of Liability**. Assignee's liability to make each Periodic Payment to Claimant or Successor Payee designated to receive such payment shall be fully discharged upon:

    i. the mailing of a valid check on or before the due date for such payment to the address of record specified by Claimant or Successor Payee; or

    ii. the electronic funds transfer (EFT) on or before the due date for such periodic payment to the financial institution account designated by Claimant or Successor Payee

    If Claimant or Successor Payee does not receive a scheduled payment, Claimant or Successor Payee shall notify Assignee. Upon receipt of such notification, Assignee shall initiate a stop payment action for such check and upon confirmation that such check was not previously negotiated shall promptly mail a replacement check;  or

    If Claimant or Successor Payee does not receive a scheduled EFT payment, Claimant or Successor Payee shall notify Assignee. Upon receipt of such notification, Assignee shall initiate a trace for such payment and upon confirmation that such payment was not credited to the account shall promptly issue an EFT replacement.

7. **Acceleration, Transfer of Payment Rights**. None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

    No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries**. Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate unless otherwise provided in the Settlement Agreement. As used in this Agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee. However, Assignee will not be liable for any payment made prior to receipt of the request or so soon thereafter that payment could not reasonably be stopped. Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c)**. If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant(s) of Assignor's liability shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect**.

    i. This Agreement shall be governed by and interpreted in accordance with the internal laws of the state identified as Governing Law above; provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    ii. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Advice, Comprehension of Agreement**. In entering into this Agreement, each Claimant warrants, represents and agrees that Claimant is solely relying on the attorneys and advisors of such Claimants own choosing, and not upon Assignor, Assignee or their advisors, for legal and tax advice regarding the consequences of this Agreement. Each Claimant further warrants, represents and agrees that the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant. Furthermore, each Claimant hereby releases and discharges Assignor, Assignee, and Annuity Issuer, their respective counsel, and anyone else associated with them from any and all claims, rights, damages, costs or expenses of any nature whatsoever that may hereafter accrue to or be acquired by Claimant by reason of the legal or tax consequences of the Periodic Payments to be made pursuant to this Agreement being other than those anticipated by Claimant.

12. **Future Cooperation**. All parties agree to cooperate fully and to execute any and all supplementary documents and take all additional actions, which are not inconsistent with its terms, which may be necessary or appropriate to give full force and effect to the terms and intent of this Qualified Assignment. Pursuant to its obligations under this Paragraph 12, and without

limitation, Assignor shall promptly provide Assignee with copies of any required court approval with respect to the underlying settlement and executed copies of all required settlement documents.

13. **Description of Periodic Payments.** The Periodic Payments are as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

In the event of any conflict between this Agreement and the Settlement Agreement with respect to the periodic payments or the assignment made herein, the terms and conditions of this Agreement shall prevail.

This Qualified Assignment and Release Agreement may be signed in one or more counterparts.

**Assignor**: City of Philadelphia

By:_____
         Authorized Representative

Title:_____

**Assignee:**
BHG Structured Settlements, Inc.

By:_____
         Authorized Representative

Title:_____

**Claimant(s):**   J    B

By:_____
   J        B        by his representative

**Attorney for Claimant(s):**  Alan Yatvin

Approved as to Form and Content

By:_____
              Signature

# Addendum No. 1
# Description of Periodic Payments

Payee:  J         B

Guaranteed lump sum payment of $20,000.00 payable         2021.
Guaranteed lump sum payment of $25,000.00 payable         2027.
Guaranteed lump sum payment of $39,000.00 payable         2032.

Beneficiary:  The Estate of J           B

INITIALS

| | Assignor: | _____ |
| | Assignee: | _____ |
| | Claimant: | _____ |
| Attorney for Claimant: | _____ |